MONTGOMERY WARD & COMPANY, INC v DEPARTMENT OF
TREASURY

Docket No. 124639. Submitted June 28, 1991, at Lansing. Decided
November 4, 1991, at 9:25 A.M.

Montgomery Ward & Company, Inc., brought an action in the
Court of Claims against the Department of Treasury, seeking a
refund of additional single business taxes it paid under protest
after receiving notice by the department of an intent to levy
additional taxes, after it had determined following an audit,
that the plaintiff improperly had made deductions from its tax
base for interest income in the years 1982 through 1984. The
deductions related to credit accounts that the plaintiff had sold
under an agreement whereby the account balances and accrued
finance charges were transferred to the purchaser of the ac-
counts, but any finance charges accruing after the transfer
were retained by the plaintiff and deducted from its tax base as
interest income. The department determined that it was the
purchaser, not the plaintiff, that was entitled to the deduction
for the finance charges that accrued after transfer. The depart-
ment subsequently filed a counterclaim in which it alleged,
alternatively that the sale of the accounts had involved pay-
ments of interest by the plaintiff to the purchaser and that
such payments should have been added to the plaintiff's tax
base. The court, James T. Kallman, J., granted summary
disposition for the plaintiff with respect both to its claim of
refund and the department's counterclaim, after finding that it
had subject-matter jurisdiction of the plaintiff's appeal but not
of the counterclaim. The department appealed.

The Court of Appeals held:

1. The trial court did not lack subject-matter jurisdiction of
the plaintiff's appeal from the notice of intent to assess addi-
tional taxes. Pursuant to MCL 205.21; MSA 7.657(21) and MCL
205.22; MSA 7.657(22), a taxpayer aggrieved by an initial notice

REFERENCES

Am Jur 2d, State and Local Taxation §§ 1065, 1066, 1082, 1140,
1143.

See the Index to Annotations under Claims Court; Counterclaim
and Setoff; Refund and Repayment; Taxes.

of intent to levy taxes may appeal in the Court of Claims if the taxpayer, under protest, has paid the disputed assessment and any penalties or interest. Such a taxpayer is not required first to seek an informal conference with the Department of Treasury, wait for a final assessment, or otherwise seek a refund in the department before filing an action in the Court of Claims.

2. Although the counterclaim dealt with the same tax years and sales of accounts, it involved an entirely different theory of liability, for which the plaintiff, pursuant to MCL 208.87; MSA 7.558(87) or MCL 205.21(2); MSA 7.657(21)(2), was entitled to notice, an opportunity for an informal conference, and a written decision setting forth the reasons for assessment on the alternate theory. Because the plaintiff received none of these, the trial court was without jurisdiction of the subject matter of the counterclaim and it did not err in dismissing the counterclaim on that basis.

Affirmed.

1. TAXATION — REVENUE ACT — NOTICE OF INTENT TO LEVY TAXES — APPEAL — COURT OF CLAIMS.

A taxpayer aggrieved by an initial notice by the Department of Treasury of an intent to levy taxes may appeal in the Court of Claims if, under protest, it has paid the disputed assessment and any penalties or interest (MCL 205.21, 205.22; MSA 7.657[21], 7.657[22]).

2. TAXATION — SINGLE BUSINESS TAX — NOTICE OF INTENT TO LEVY TAXES — APPEAL — COURT OF CLAIMS — COUNTERCLAIMS.

The Court of Claims, in a taxpayer's appeal from an initial notice by the Department of Treasury of an intent to levy single business taxes, lacks subject-matter jurisdiction of a counterclaim asserting a theory of tax liability different from that on which the initial notice was based where the department fails to provide the taxpayer with notice, an opportunity for an informal conference, and a written decision setting forth the reasons for assessment based on the second theory of liability (MCL 205.21[2], 208.87; MSA 7.657[21][2], 7.558[87]).

*Howard & Howard* (by *Patrick R. Van Tiflin* and *Todd D. Chamberlain*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Richard R. Roesch* and *Daniel M. Greenberg,* Assistant Attorneys General, for the defendant.

Before: NEFF, P.J., and GILLIS and MICHAEL J. KELLY, JJ.

NEFF, P.J. This case arose out of a 1986 audit by defendant Michigan Department of Treasury of plaintiff Montgomery Ward & Company, Inc., for the 1982, 1983, and 1984 tax years. On March 3, 1987, a notice of intent to assess a single business tax deficiency was issued by defendant. Plaintiff paid $1,591,811.74 under protest and then appealed the payment to the Court of Claims. Defendant brought a counterclaim which was dismissed for lack of subject-matter jurisdiction. The court entered a judgment in favor of plaintiff and against defendant for refund of the single business tax paid and payment of statutory interest. Defendant appeals as of right. We affirm.

I

We note at the outset that this case was resolved on the basis of procedural considerations, not the substantive claims relating to tax liability. For clarity, however, we will briefly set out the uncontested facts of this case.

The single business tax allows a taxpayer to subtract interest income from its tax base. MCL 208.9(7)(b); MSA 7.558(9)(7)(b). Defendant contended that plaintiff had improperly subtracted interest income from its tax base.

As a retail seller, plaintiff makes many sales on credit and then assesses finance charges on those credit balances not paid within thirty days. Plaintiff then sells to Montgomery Ward Credit Corporation (MWCC) its unpaid credit accounts on a monthly basis. The sale includes its unpaid credit accounts and all finance charges accrued on the date of the transfer to MWCC. By the terms of the

agreement between plaintiff and MWCC, the ownership of subsequent finance charges remained with plaintiff, and the finance charges were sold to MWCC only after they accrued. Plaintiff then subtracted these later-accrued finance charges from its single business tax base on the theory that they represented interest income earned. Defendant contended that the interest payments received by plaintiff after the sale of the underlying obligation to MWCC should not be treated as interest income of plaintiff, but, rather, should be attributed to MWCC. In October 1986, plaintiff met with defendant in order to discuss the basis of the assessed tax deficiency. No final assessment had been issued by defendant for the amount assessed and paid by plaintiff.

On March 12, 1987, plaintiff paid $43,385, plus interest, on the tax asserted in the notice of intent to assess. On April 8, 1987, plaintiff paid the additional sum of $1,591,811.74 under protest. On July 7, 1987, plaintiff brought suit in the Court of Claims, seeking a refund of the taxes paid under protest. Defendant thereafter filed its answer. Plaintiff did not exercise its right to an informal conference with the Commissioner of Revenue following receipt of the notice of intent to levy. Plaintiff also did not seek a refund from the commissioner for any of the amount appealed to the Court of Claims.

In June 1988, defendant successfully moved to be allowed to file an amended answer and counterclaim, in which it presented a new and alternate theory of liability. Defendant contended that when plaintiff sells its accounts receivable to MWCC, plaintiff pays to MWCC a periodic discount amount that is intended to provide MWCC with an amount equal to 1.5 times the fixed charges on its debt. Its debt is generated by its sale of commercial paper

to third parties. The fixed charges are the interest on the commercial paper together with administrative expenses. The single business tax requires the addition of interest payments back to the tax base. MCL 208.9(9)(4)(f); MSA 7.558(9)(4)(f). Defendant asserted that the discount payments made by plaintiff to MWCC should be added back to its tax base.

The Court of Claims granted plaintiff's motion for summary disposition of defendant's counterclaim on the basis that defendant had failed to follow the notice procedures of the Single Business Tax Act and the revenue act. These acts required defendant to provide plaintiff with notice, an opportunity for an informal conference, and a written decision setting forth the reasons for its assessment. Accordingly, the Court of Claims found that it lacked subject-matter jurisdiction of the counterclaim. Defendant thereafter moved to dismiss plaintiff's complaint for lack of subject-matter jurisdiction on the basis that plaintiff had failed to follow statutorily established methods of seeking a tax refund or relief from an assertion of tax due, but the Court of Claims denied defendant's motion.

Plaintiff also moved for summary disposition with regard to its principal claim for refund on the grounds that there was no material issue of fact and defendant had failed to state a valid defense to plaintiff's claim. The court entered a judgment of summary disposition in favor of plaintiff.

II

Defendant first argues that the Court of Claims erred in denying its motion to dismiss for lack of jurisdiction because an appeal from a notice of intent to assess is not statutorily authorized. Plaintiff argues that its appeal to the Court of Claims is jurisdictionally sound. We agree with plaintiff.

If the plain and ordinary meaning of statutory language is clear, judicial construction is normally neither necessary nor permitted. *Nat'l Exposition Co v Detroit,* 169 Mich App 25, 29; 425 NW2d 497 (1988). Here, the language of §§ 21 and 22 of the revenue act clearly evidences an intent by the Legislature to allow an appeal from a notice of intent to assess.

Sections 21 and 22 of the revenue act, MCL 205.21; MSA 7.657(21) and MCL 205.22; MSA 7.657(22), govern the procedure for assessment of tax due and appeals from those assessments. Section 21(1) provides in pertinent part:

> As soon as possible after procuring information, the department shall assess the tax determined to be due and shall notify the taxpayer of the assessed amount and the specific reasons for the assessment.

Section 21(2) provides that, after determining the amount of tax due from a taxpayer, the department shall give notice to the taxpayer of its intent to levy the tax, and the notice shall include a statement advising the taxpayer of the right to an informal conference. That section further provides in pertinent part:

> If the taxpayer serves written notice upon the department within 20 days after receipt of the notice to the taxpayer and remits the uncontested portion of the liability, the taxpayer may request an informal conference on the question of liability for the assessment. . . . The taxpayer may appear or be represented before the department and present testimony and argument. After the conference, the commissioner shall render a decision and order in writing, setting forth the reasons and authority, and levy any tax, interest, and penalty found to be due and payable. The assessments

shall be final and subject to appeal as provided in section 22. The final notice of assessment shall include a statement advising the taxpayer of a right to appeal.

Defendant relies on the language that states that a final notice of assessment is appealable to support its argument that a taxpayer may appeal only a final assessment and not the initial assessment found in the notice of the intent to levy taxes described in § 21(1). This argument is not persuasive.

Section 22 of the act deals with appeals from departmental action and states in pertinent part:

(1) A person aggrieved by assessment, decision, or order of the department may appeal the contested portion of an assessment, decision, or order to the . . . court of claims within 90 days after the assessment, decision, or order.

Because § 21(1) clearly describes the amount contained in an initial notice of intent to levy tax as an "assessment," the initial assessment is within the purview of § 22. There is nothing in § 21(2) that indicates that only final assessments that follow an informal conference are meant to be appealable. In this case, plaintiff appealed from the "assessment" contained within the notice of intent to levy.

Section 22 also requires that, in an appeal to the Court of Claims, the appellant must first pay the tax, including penalties and interest, under protest and claim a refund as part of the appeal. Plaintiff correctly paid the amount in controversy before the appeal and then claimed a refund as part of the appeal. Plaintiff therefore satisfied the requirements to perfect the jurisdiction of the Court of Claims.

Plaintiff's arguments are persuasive with respect
to why a taxpayer should not have to wait for a
final assessment before initiating an appeal. The
statute clearly states that a taxpayer "may" re-
quest an informal conference. Because this is op-
tional, it should not be a prerequisite to an appeal.
Additionally, the notice of intent to levy states
that the taxpayer will be assessed additional pen-
alty and interest if the amount assessed is not paid
within thirty days. In light of this, it is disingenu-
ous to argue that the notice represented only an
intent to assess and not an assessment.

Defendant also argues that plaintiff's payment
in response to the notice of intent to levy should
be viewed as a voluntary payment. If plaintiff's
payment were viewed as voluntary, plaintiff could
appeal under § 30 of the revenue act only if it
formally sought a refund from the department and
that request for refund was denied. Thus, defen-
dant argues that plaintiff failed to exhaust avail-
able administrative remedies before seeking an
appeal in the Court of Claims. This argument also
is not persuasive. While a taxpayer has the option
to utilize § 30 to request a refund from a voluntary
payment, plaintiff's payment was not voluntary.
The notice of intent to levy warned that unless the
amount assessed was paid within thirty days, in-
terest and penalty would be assessed. Thus, the
payment was not voluntary but was made in re-
sponse to defendant's threat of additional interest
and penalty.

### III

Defendant next argues that, even assuming the
Court of Claims had jurisdiction, the court erred in
dismissing defendant's counterclaim. Once a plain-
tiff has perfected an appeal and properly invoked

the jurisdiction of the Court of Claims, the statutorily prescribed rules and jurisdictional provisions of the Court of Claims apply. Defendant contends that the rules of the Court of Claims specifically allow counterclaims and that its filing of a counterclaim does not offend the requirement of exhaustion of administrative remedies.

Plaintiff contends that the counterclaim filed by defendant set forth an additional theory of recovery of taxes due from plaintiff that was based on a completely different set of operative facts than the first assessment. Plaintiff claims that defendant's filing of a completely different claim violated its rights to notice of assessment, the right to an informal conference, the amount of tax, interest and penalty, and the reasons and authority for the assessment. According to plaintiff, the denial of these rights clearly violated the mandatory statutory protections provided by the revenue act. We agree with plaintiff.

Section 22 of the revenue act requires that an appeal to the Court of Claims

be perfected as provided under . . . chapter 64 of Act No. 236 of the Public Acts of 1961, as amended, being sections 600.6401 to 600.6475 of the Michigan Compiled Laws, and rules adopted under that chapter for the court of claims.

Section 6419(1)(b) of the Court of Claims Act, MCL 600.6419(1)(b); MSA 27A.6419(1)(b), provides that the court has power and jurisdiction:

To hear and determine any claims or demands, liquidated or unliquidated, ex contractu or ex delicto, which may be pleaded by way of counterclaim on the part of the state or any department, commission, board, institution, arm, or agency of the state against any claimant who may bring an

action in the court of claims. Any claim of the state or of any department, commission, board, institution, arm, or agency of the state may be pleaded by way of counterclaim in any action brought against the state, or any other department, commission, board, institution, arm, or agency of the state.

In granting plaintiff's motion for summary disposition of defendant's counterclaim, the court found that defendant was required by the terms of either § 87 of the Single Business Tax Act, MCL 208.87; MSA 7.558(87), or § 21(2) of the revenue act, MCL 205.21(2); MSA 7.657(21)(2), to provide plaintiff with notice, an opportunity for an informal conference, and a written decision setting forth the reasons for its assessment. The court further found that defendant had failed to do so before bringing its counterclaim, that it therefore had failed to exhaust its administrative remedies before bringing its counterclaim, and that the court was without subject-matter jurisdiction.

In reaching this decision, the court reasoned that pursuant to *Bechtel Power Corp v Dep't of Treasury,* 128 Mich App 324; 340 NW2d 297 (1983), revenue statutes must be construed against the taxing authority, that the mandatory directives of the Single Business Tax Act and the revenue act required defendant to grant these procedural rights to plaintiff, and that the Court of Claims Act and the revenue act, because they deal with the same subject matter, must be construed in the event of a conflict to preserve the meaning and intent of each other so that neither denies the effectiveness of the other. See *People v Tucker,* 177 Mich App 174, 179; 441 NW2d 59 (1989), and *Paquin v Northern Michigan University,* 79 Mich App 605, 607; 262 NW2d 672 (1977).

This reasoning is especially persuasive because

otherwise defendant could "counterclaim" any amount on any theory for the tax years in question. Defendant argues that there is no problem with lack of notice because the counterclaim deals with the same set of "operative facts." This is not much assurance to a taxpayer if any liability alleged to have accrued within a given tax year is considered to have arisen from the same set of "operative facts." Under such circumstances, a taxpayer could be ambushed at the appellate level with an entirely new theory of tax liability and be forced to defend against a much larger tax liability than that from which it originally appealed.

The procedural situations of taxpayer appeal cases are not analogous to the situation in which the typical "counterclaim" arises. In taxpayer appeal cases, the plaintiff's or taxpayer's claim is for relief from a tax assessment imposed by the treasury. If counterclaims are allowed, the defendant would be allowed to assert additional claims against the plaintiff, and the plaintiff would be forced to defend itself without the procedural safeguards considered necessary in the revenue act for imposing tax assessments.

We conclude that the tax assessment asserted by defendant in its counterclaim represented an entirely different theory of liability even though it dealt with the same tax years and transactions. The Court of Claims did not err in dismissing the counterclaim for lack of jurisdiction.

Affirmed.