LEPALM v REVCO DS, INC

O'SHEA v THE DETROIT NEWS

Docket Nos. 136328, 142487, 142623. Submitted December 17, 1992, at Lansing. Decided October 5, 1993, at 9:25 A.M. Leave to appeal sought.

Frederick LePalm was awarded workers' compensation benefits as a result of the death of his wife, Barbara LePalm, from injuries suffered during the course of her employment with Revco DS, Inc. A hearing referee found the claimant to be partially dependent on the income of his deceased wife and awarded benefits at fifty percent of the state average weekly wage on the basis of the minimum benefit provision of MCL 418.356(2); MSA 17.237(356)(2). The Workers' Compensation Appeal Board affirmed, but adjusted in the amount of the weekly benefit. Revco appealed by leave granted.

Suzanne O'Shea, personal representative of the estate of Arthur O'Shea, was awarded workers' compensation benefits as the result of the death of her husband, Arthur O'Shea, from a heart attack that arose out of his employment with The Detroit News. A magistrate awarded benefits of approximately sixty-eight percent of the applicable weekly benefits that would have been paid to a wholly dependent claimant on the basis that the decedent had contributed a similar percentage of the family income. The Workers' Compensation Appeal Board held that the magistrate incorrectly calculated the benefit rate applicable under the circumstances, but further found that the minimum benefit provision of § 356(2) was applicable because the benefit rate when calculated by the method that the board deemed proper was less than fifty percent of the state average weekly wage. The Detroit News and its insurer, Creative Risk Management, appealed by leave granted, asserting that the claimant was not entitled to any benefits and, if she were entitled to benefits, the amount of benefits due had not been calculated properly. The claimant also appealed by leave granted, claim-

REFERENCES

Am Jur 2d, Workers' Compensation §§ 188, 193, 202, 418.
See ALR Index under Workers' Compensation.

ing that the magistrate's award should have been affirmed by the appeal board.

The appeals were consolidated.

The Court of Appeals *held:*

1. The minimum weekly benefit provision of § 356(2) applies to all benefits payable under the death benefit provision, MCL 418.321; MSA 17.237(321). Accordingly, the minimum benefit provision of § 356(2) is applicable to partially dependent survivors.

2. The appeal board's holding that LePalm is entitled to death benefits in the amount of fifty percent of the state average weekly wage is correct and is affirmed.

3. The appeal board recognized that the proper test to determine whether a heart attack is compensable is whether the attack was contributed to or aggravated or accelerated by the employment in a significant manner, and it properly applied that test.

4. The weekly death benefit of a partially dependent survivor is calculated pursuant to § 321 by dividing the difference between the decedent's salary and the partially dependent survivor's income by the decedent's salary, and then multiplying that result by the weekly benefit that a wholly dependent survivor would have received. The partially dependent claimant is entitled to the greater of the amount so calculated or fifty percent of the state average weekly wage.

5. The appeal board correctly determined that claimant O'Shea established that her husband's death from a heart attack was attributable to his employment and was compensable. The appeal board further correctly held that claimant O'Shea was entitled to benefits in the amount of fifty percent of the state average weekly wage, but erred in adopting and using an incorrect method of calculating the death benefits for a partially dependent survivor.

Affirmed with respect to the LePalm claim and with respect to the benefits payable to claimant O'Shea, but reversed with respect to the method used by the appeal board to calculate benefits payable pursuant to § 321.

1. WORKERS' COMPENSATION — DEPENDENTS — DEATH BENEFITS.

The provision fixing the minimum weekly benefit level of workers' compensation death benefits at fifty percent of the state average weekly wage is applicable to benefits paid to partially dependent claimants (MCL 418.356[2]; MSA 17.237[356][2]).

2. WORKERS' COMPENSATION — DEPENDENTS — DEATH BENEFITS.

The workers' compensation weekly death benefit for a partially

dependent survivor is calculated by dividing the difference between the decedent's salary and the partially dependent survivor's income by the decedent's salary, and then multiplying that result by the weekly benefit that a wholly dependent survivor would have received (MCL 418.321; MSA 17.237[321]).

*Quinn, Borella, Stockton & Amsbaugh, P.C.* (by *Arthur A. Borella*), for Frederick LePalm.

*Cox & Hodgman* (by *Marsha M. Woods*), for Suzanne O'Shea.

*Lacy & Jones* (by *Susan B. Cope*), for Revco DS, Inc.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for The Detroit News.

Before: McDONALD, P.J., and GRIBBS and SAW-YER, JJ.

PER CURIAM. These consolidated cases involve common questions regarding the proper calculation of workers' compensation death benefits. We agree with the Workers' Compensation Appeal Board that the statute provides a minimum weekly death benefit for both wholly and partially dependent survivors, but disagree with regard to the method of calculating 'the amount of compensation due partially dependent survivors.

I

A

Plaintiff LePalm filed a petition for hearing on February 8, 1985, claiming death benefits as a partial dependent of his wife, who was killed during the course of her employment with Revco on January 7, 1985. In a decision mailed on August 13, 1986, a hearing referee found plaintiff to

be partially dependent on his deceased wife and thus entitled to death benefits under § 321 of the Workers' Disability Compensation Act, MCL 418.321; MSA 17.237(321), which at the time in question provided in part:

> If death results from the personal injury of an employee, the employer shall pay, or cause to be paid, subject to section 375, in 1 of the methods provided in this section, to the dependents of the employee who were wholly dependent upon the employee's earnings for support at the time of the injury, a weekly payment equal to 80% of the employee's after-tax average weekly wage, subject to the maximum and minimum rates of compensation under this act, for a period of 500 weeks from the date of death. . . . If the employee leaves dependents only partially dependent upon his or her earnings for support at the time of injury, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of injury.

The referee agreed with plaintiff that the reference in this section to "maximum and minimum rates of compensation" applies to both wholly and partially dependent survivors. Because § 356(2) of the Workers' Disability Compensation Act, MCL 418.356(2); MSA 17.237(356)(2), provides that the "minimum weekly benefit for death under section 321 shall be 50% of the state average weekly wage," the referee awarded plaintiff fifty percent of the state average weekly wage in January 1985, $198.89, for a period of five hundred weeks beginning January 8, 1985.

Defendant appealed, and in an opinion and order dated November 28, 1990, the WCAB affirmed,

although it modified the weekly benefit amount to $198.74. The WCAB rejected Revco's argument that LePalm could not be a dependent because he earned more than his wife.

This Court granted Revco's application for leave to appeal to consider the question whether the minimum benefit level set in § 356(2) applies to partially dependent survivors.[1]

B

Plaintiff O'Shea's husband began working for The Detroit News in 1970. Plaintiff testified that her husband suffered no injuries or physical difficulties while he worked for defendant until October 1983. At that time he was transferred to the midnight shift, where his duties included covering police reports. Plaintiff testified that after his transfer her husband had trouble eating, sleeping, and digesting his food. She testified that he developed a skin problem similar to hives, which became progressively worse, and that he felt exhausted all the time and had difficulty breathing. Plaintiff explained that her husband was very upset by his transfer to the midnight shift. He felt humiliated and degraded because the work had normally been assigned to cub reporters.

Defendant's husband reported to work at 11:00 P.M. on December 5, 1983. He left work at the end of the shift on December 6. Plaintiff testified that when he returned home she noticed that his skin color was gray. He said that he was exhausted and had not felt well during his shift. Plaintiff testified that her husband departed from his usual routine of sitting with her and having a cup of coffee or

---

[1] Revco has not challenged the WCAB's conclusion that LePalm was partially dependent even though he earned more than his wife. We therefore do not address that issue here.

juice while talking, and instead took a shower, lay down, and attempted to sleep. After plaintiff had gone to work, she received a call from her husband requesting her to come home right away because he needed her help. Plaintiff testified that she rushed home to find her husband sitting partially dressed on the bed. His complexion was gray and his face was covered with perspiration. He said that he was in a great deal of pain. Plaintiff called an ambulance, and her husband was transported to a hospital, where he remained until December 23, 1983. Hospital records indicate that her husband was diagnosed as suffering a heart attack.

Plaintiff's husband returned home after his discharge from the hospital. On February 19, 1984, he collapsed on his bed after stating that he felt light-headed. He was transported by ambulance to a hospital, where he was diagnosed as having suffered a second heart attack complicated by cardiac arrest. He died on February 28, 1984, at fifty-seven years of age.

On cross-examination plaintiff admitted that there were other stresses in her husband's life that were not employment-related. In particular, their daughter had become addicted to morphine and subsequently ran afoul of the law. Although plaintiff admitted that her husband was naturally unhappy with the situation, she maintained that he was relieved that their daughter had been jailed, because that would give her an opportunity to wean herself from the morphine and come to grips with her situation.

Dr. Harvey Kroll testified by way of deposition that there was a causal relationship between the stress that plaintiff's husband had experienced as a result of his transfer to the midnight shift and his myocardial infarction. He further opined that there was a definite relationship between Mr.

O'Shea's employment and his death on February 28, 1984. Dr. Sheldon Kaftan concurred. On the other hand, Dr. Clyde Wu and Dr. Sidney Schuchter opined that Mr. O'Shea's death was not related to his employment and his transfer to the midnight shift. Dr. Schuchter stated that the cause of the December 1983 heart attack was arteriosclerosis and was in no way related to work. Dr. Schuchter noted that the decedent was a "fairly heavy cigarette smoker" and stated that there was no evidence that chronic emotional stress was in any way related to arteriosclerosis or the onset of myocardial infarction.

In a decision mailed on January 13, 1988, a magistrate found the death work-related and awarded plaintiff death benefits for five hundred weeks in the amount of $220.58.

Defendant appealed, and, in a decision and order dated June 14, 1991, the WCAB affirmed. The WCAB held that plaintiff had satisfied her burden of proof by showing that specific incidents or events at work contributed to or aggravated or accelerated her husband's heart damage and subsequent death in a significant manner.

On appeal to the WCAB defendant also challenged the amount of death benefits awarded by the magistrate. The magistrate found that the decedent's 1983 income was $36,994, while plaintiff's earnings were $17,346, for a total family income of $54,340. Because the maximum death benefit at the time was $324 a week and because plaintiff's husband contributed a little over sixty-eight percent of the family income, the magistrate awarded a little over sixty-eight percent of $324 as a weekly death benefit.

Defendant argued that the magistrate ignored the formula in § 321 for calculating death benefits to be awarded to partially dependent survivors.

Defendant argued that because the family income was $54,340, both plaintiff and her husband received $27,170 of support from the common fund. Defendant then subtracted plaintiff's earnings of $17,346, and concluded that plaintiff's husband contributed $9,824 to her support. Because this amounts to 26.8 percent of decedent's salary, defendant argued that § 321 limits plaintiff to that percentage of the maximum benefit of $324, or $87.83 a week.

Plaintiff responded that the magistrate had calculated properly plaintiff's percentage of dependency and the amount of weekly benefits. In addition, because § 321 makes the calculation of death benefits subject to the "maximum and minimum rates of compensation under this act," plaintiff argued that her weekly benefit could not fall below fifty percent of the state average weekly wage pursuant to § 356(2).

The WCAB agreed with defendant that the magistrate improperly calculated the benefit rate, but agreed with plaintiff that § 356(2) establishes a floor for death benefits. Accordingly, the WCAB modified the magistrate's decision and awarded plaintiff $179.45 in weekly benefits.

Defendant sought leave to appeal, arguing that the WCAB erred both in finding that plaintiff was entitled to any benefits and in calculating the amount of benefits that she is due. Plaintiff also sought leave to appeal, arguing that the WCAB erred in failing to affirm the magistrate's award of benefits in an amount greater than fifty percent of the state average weekly wage. This Court granted both applications, as well as defendant's motion to consolidate with the appeal by Revco.

II

A

Findings of fact made by the WCAB are conclusive in the absence of fraud and may not be set aside if supported by any competent record evidence. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). Questions regarding injury, disability, and causation, as well as the credibility of medical and lay witnesses, are for the WCAB to decide. *Nezdropa v Wayne Co,* 152 Mich App 451, 461; 394 NW2d 440 (1986). Legal questions, however, are reviewable fully by this Court. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978).

We agree with the WCAB's legal conclusion that the minimum benefit provision of § 356(2) applies to all death benefits awarded under § 321. The statute makes no distinction between wholly and partially dependent survivors. When the plain and ordinary meaning of statutory language is clear, judicial construction is normally neither necessary nor permitted. *Montgomery Ward & Co, Inc v Dep't of Treasury,* 191 Mich App 674, 679; 478 NW2d 745 (1991).

Revco argues that this conclusion ignores the fact that § 321 refers to "the maximum and minimum rates of compensation under this act" only in connection with individuals who are wholly dependent on the deceased. Revco argues that because the benefit rate for partially dependent survivors is defined as a percentage of the benefit rate for wholly dependent survivors, the minimum benefit level should be used in the calculation of the amount due wholly dependent survivors. If the deceased's wages were so low that a wholly dependent survivor would otherwise be entitled to less than fifty percent of the state average weekly

wage, a wholly dependent survivor is nevertheless entitled to that minimum amount pursuant to § 356(2). If there are no wholly dependent survivors, the partially dependent survivors should receive a percentage of the amount calculated for the wholly dependent survivor, which in this hypothetical case would be less than fifty percent of the state average weekly wage. Such partially dependent survivors should not themselves be entitled to the minimum amount.

We reject defendant's interpretation of the statute. Section 356(2) categorically states that the "minimum weekly benefit for death under section 321 shall be 50% of the state average weekly wage," and does not distinguish between wholly and partially dependent survivors. Although § 321 does not repeat the proviso regarding the maximum and minimum rates in the sentence applicable to partially dependent survivors, neither does it repeat the five-hundred-week limitation on death benefit payments that everyone agrees applies to partially dependent survivors. We believe that the Legislature meant to make death benefits subject to the statutory maximum and minimum, and limit them for a period for five hundred weeks from the date of death, in cases of partially dependent survivors as well as those wholly dependent.

We affirm the WCAB's holding that LePalm is entitled to death benefits in the amount of fifty percent of the state average weekly wage.

### B

The Detroit News argues that the WCAB incorrectly applied the test for compensable heart attacks stated in *Miklik v Michigan Special Machine Co,* 415 Mich 364; 329 NW2d 713 (1982), when it should have applied the test required by § 301(2) of

the act, MCL 418.301(2); MSA 17.237(301)(2), which provides in part:

> Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner.

Defendant is mistaken. The WCAB agreed that the significant-manner test must be applied in conjunction with *Miklik*, and found that plaintiff satisfied her burden of proof. Because defendant does not dispute the WCAB's factual findings and because they are supported by competent evidence, this issue is without merit.

The Detroit News also argues that the WCAB erred in holding that the minimum benefit provided by § 356(2) applies to partially dependent survivors. We disagree for the reasons given in § II A above.

Plaintiff O'Shea contends that the WCAB erred in calculating the amount of her death benefit. She contends that the magistrate properly found that because her husband contributed a little more than sixty-eight percent of the family income, plaintiff is entitled to a little more than sixty-eight percent of the maximum weekly benefit of $324 that would have been paid to a wholly dependent individual, or $220.58 a week. Although plaintiff's suggestion may seem reasonable in the abstract, we find no support for it in the language of § 321, which defines the benefits payable to partially dependent survivors in terms of a percentage of those payable to wholly dependent survivors, determined by dividing the amount contributed by the deceased to the partially dependent survivors by the annual earnings of the deceased at the time of injury.

Defendant and the WCAB champion a method of calculating death benefits for partially dependent survivors that is more in keeping with the statutory language. Under this formula, the total family income is computed, the total is allocated to family members in equal shares, and the amount contributed by any partially dependent survivor is then subtracted. The result is then divided by the decedent's income, and the resulting percentage is multiplied by the benefits a wholly dependent survivor would have received to determine the benefits to be received by the partially dependent survivor. As noted above, under this formula, decedent's contribution to plaintiff equaled 26.8 percent of his salary, and so plaintiff should be entitled to this percentage of the maximum benefit of $324, or $87.83 a week.

Under this formula, a single surviving dependent whose earnings constituted only one percent of the family income would receive only 49.4 percent of the amount a wholly dependent survivor would have received, and a survivor whose earnings equaled ten percent of the family income would receive only 44.4 percent of a wholly dependent survivor's benefit.[2] We find it difficult to believe that the Legislature intended to reduce so drastically the benefits due a survivor who earned only a fraction of the total family income.

If the formula championed by the WCAB and defendant were the only reasonable interpretation of the statute, our concern with the apparent inequity in result would not justify ignoring the statutory language. However, we believe that

[2] Although a survivor's share of family income may be so low as to be de minimis, entitling the survivor to be considered wholly dependent, we do not believe that a ten percent share of family income is so small that the survivor should be considered wholly and not partially dependent.

there is another reasonable interpretation of the statute that yields more equitable results. We believe that the "amount contributed by the employee to such partial dependents" in § 321 should be interpreted as meaning the difference between the decedent's income and the survivors' income. This result is then divided by the decedent's income, and the resulting percentage applied to the amount of benefits that a wholly dependent survivor would have received. Under this formula, the survivor who earned one percent of the family income, would receive ninety-nine percent of the amount a wholly dependent survivor would receive, and the survivor who earned ten percent of the family income would receive 88.9 percent.

We believe that this formula is in keeping with the probable legislative intent of reducing the percentage of a partially dependent survivor's benefits as a function of the survivor's share of the family income. Moreover, we find support for this formula in the 1985 amendment of § 321, effective when death occurred on or after July 30, 1985, which makes a partially dependent survivor's benefits equal to "the same proportion of the weekly payments for the benefit of persons wholly dependent as 80% of the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of injury." When an employee leaves one wholly dependent survivor, that survivor receives a weekly payment equal to eighty percent of the employee's after-tax weekly wage, subject to the statutory maximum and minimum. This is precisely the result that follows from the formula we adopt for partially dependent survivors. When the survivor is wholly dependent, zero is subtracted from the decedent's salary and eighty percent of that amount divided by the decedent's annual

earnings equals eighty percent, precisely the percentage called for by the Legislature.

Applying the formula in this case, we subtract plaintiff's salary of $17,346 from decedent's $36,994 salary and divide the result ($19,648) by decedent's salary. We then multiply that result (53.1 percent) by the maximum rate of $324 a week and conclude that plaintiff would be entitled to $172.04 a week, but for the fact that she is entitled to the statutory minimum of $179.45 a week.

In sum, we affirm the WCAB's decisions that plaintiff O'Shea is entitled to benefits because of her husband's death, and that as a partially dependent survivor she is entitled to at least fifty percent of the state average weekly wage. We reverse, however, the WCAB's holding regarding the formula to be used in calculating death benefits for partial dependents.