WEEMS v CHRYSLER CORPORATION

Docket Nos. 97725, 97736, 97737. Argued December 7, 1994 (Calendar
No. 3). Decided May 31, 1995. Rehearing denied 449 Mich 1206.

Chrysler Corporation sought a determination by the Bureau of
Worker's Disability Compensation regarding who was depen-
dent on Clifford Weems, who was fatally injured in a work-
related automobile accident during the course of his employ-
ment with Chrysler, and whether those persons had been
partially or wholly dependent on him. Virginia Weems, widow
of Clifford, also filed a petition with the bureau, claiming that
she and her three grandchildren were dependent on the de-
ceased. A magistrate held that the plaintiff was fully depen-
dent, but that her grandchildren were not, and ordered Chrys-
ler to pay her benefits at the maximum weekly rate. The
Worker's Compensation Appellate Commission modified the
decision, holding that because Mrs. Weems received a monthly
pension, she was only partially dependent on the deceased. The
commission additionally concluded that the maximum and
minimum rates of compensation applied to partially, as well as
wholly, dependent persons, and that because the formula used
to calculate her benefits produced a figure lower than the
minimum rate of compensation, she was entitled the minimum
weekly rate. The Court of Appeals, GRIBBS, P.J., and MICHAEL J.
KELLY and REILLY, JJ., affirmed (Docket Nos. 143709,
144061). The plaintiff appeals.

    In an opinion by Justice RILEY, joined by Chief Justice
BRICKLEY, and Justices MALLETT and WEAVER, the Supreme
Court held:

    The proper formula for the calculation of weekly benefits for
a partially dependent person must include consideration of the
person's regular and substantial income. The decedent's annual
after-tax earnings are to be combined with the partially depen-
dent person's regular and substantial annual income, to pro-
vide the total relevant annual family income; the decedent's
annual after-tax earnings are then to be divided by the total

REFERENCES
Am Jur 2d, Workers' Compensation §§ 185, 188, 191-194.
See ALR Index under Workers' Compensation.

relevant annual family income; that result is to be multiplied by eighty percent; and again multiplied by the decedent's after-tax weekly wage. A weekly benefit so calculated is not subject to the maximum and minimum rates of compensation; however, a partially dependent person's weekly benefits are inherently subject to the maximum and minimum rates of compensation.

1. A regular and substantial supplemental income, which is not merely temporary, mandates a determination of partial dependency. In this case, because the plaintiff received regular and substantial monthly income, she was partially dependent on her deceased husband. The WCAC's conclusion is supported by competent evidence, and therefore is conclusive.

2. It is clear from the language of MCL 418.321; MSA 17.237(321) that the Legislature intended to treat wholly and partially dependent persons proportionately on the basis of their dependence. Claimants who are wholly dependent on a deceased employee are to receive death benefits totaling eighty percent of a deceased employee's after-tax weekly earnings. It logically follows that partially dependent persons are to receive that portion of their dependency on a deceased employee.

3. To determine a partially dependent person's benefits, the decedent's annual after-tax earnings are combined with the partially dependent person's regular and substantial annual income. The result is the total relevant annual family income. The claimant's partial dependency is determined by dividing the decedent's annual after-tax earnings by the total relevant annual family income. Proportionality with the formula for wholly dependent benefits then requires that the resulting figure be multiplied by the amount that would be awarded if the partially dependent person were wholly dependent.

4. The fact that the worker's compensation statute distinguishes between wholly and partially dependent persons indicates that the two classes are ultimately intended to be compensated differently. A partially dependent person should only expect to receive a proportionate share of what a wholly dependent person would receive. The maximum and minimum rates of compensation must not be applied to alter a partially dependent person's weekly benefit after the proper formula has been applied. A partially dependent person's benefit is a proportionate share of a wholly dependent person's benefit, which already has been adjusted according to the statutory maximum and minimum rates of compensation.

Affirmed in part and reversed in part.

Justice CAVANAGH, joined by Justice LEVIN, concurring in part and dissenting in part, stated that whether a person is wholly or partially dependent on a deceased employee is a question of law, not limited on review.

The Legislature provided that persons who were wholly dependent on a deceased employee would receive death benefits totaling eighty percent of the deceased employee's after-tax earnings. Persons who were partially dependent each would receive a proportionate amount of the deceased employee's after-tax earnings that reflected the extent of the dependency. The portion of the employee's salary that was used to support the dependents requires a factual determination by the trier of fact.

Death benefits for partially dependent persons are to be determined by the same procedure that death benefits for wholly dependent persons are determined, and, thus, should be a direct function of the deceased employee's after-tax average weekly wage. MCL 418.321; MSA 17.237(321) provides that the amount contributed to a partially dependent person is to be divided by the decedent's annual earnings, multiplied by eighty percent, and again multiplied by the decedent's after-tax average weekly wage. The result will never result in an award to a partially dependent person that is greater than an award to a wholly dependent person, and almost always will result in an award that is less. If the resulting amount is greater or lesser than the statutory limits, then, and only then, should the limits be applied.

There is no language in § 321 that would suggest that the amount of the dependent person's income is a relevant factor in the statutory formula. The only relevant amount is the deceased employee's income that was provided to support the dependents. A partially dependent person's financial status is not tied to a wholly dependent person's financial status; it is independent and unrelated. The issue is how much income is required to maintain a household's standard of living.

The majority's assertion that a claimant's partial dependency is the fraction of the total relevant annual family income contributed by the deceased employee's annual after-tax earnings, while sounding plausible, is not found in § 321. Section 321 refers to the fraction of the deceased employee's income that the employee contributed to the dependents, not the fraction of the common pool that came from the deceased employee. The formula will prove inflexible when applied to multiple households. The sounder approach is to preserve the flexibility the statute provides: for those not conclusively pre-

sumed to be wholly dependent, the question of dependency is one of fact.

Justice BOYLE, concurring in part and dissenting in part, stated that the case should be remanded to the magistrate for a factual determination of the amount contributed by the deceased employee for calculation of partial dependent benefits. MCL 418.321; MSA 17.237(321) expressly requires that in calculating partial dependent benefits the amount contributed to a partially dependent person is to be divided by the decedent's annual earnings, multiplied by eighty percent. That figure then should be multiplied by the weekly payments for the benefit of wholly dependent persons. Although Justice CAVANAGH's formula more accurately reflects the language of the statute than does the majority's, by finding that the amendment of the statute by 1985 PA 103 adding "80% of " simply dictates that death benefits for partially dependent persons are to be determined by the same procedure that death benefits for wholly dependent persons are determined, Justice CAVANAGH effectively reads that portion of the amendment out of the statute.

201 Mich App 309; 505 NW2d 905 (1993) affirmed in part and reversed in part.

1. WORKER'S COMPENSATION — DEATH BENEFITS — PARTIAL DEPENDENTS.

The proper formula for the calculation of weekly benefits for a partially dependent person must include consideration of the person's regular and substantial income; the decedent's annual after-tax earnings are to be combined with the partially dependent person's regular and substantial annual income, to provide the total relevant annual family income; the decedent's annual after-tax earnings are then to be divided by the total relevant annual family income; that result is to be multiplied by eighty percent; and again multiplied by the decedent's after-tax weekly wage; a weekly benefit so calculated is not subject to the maximum and minimum rates of compensation; however, a partially dependent person's weekly benefits are inherently subject to the maximum and minimum rates of compensation (MCL 418.321; MSA 17.237[321]).

2. WORKER'S COMPENSATION — DEATH BENEFITS — PARTIAL DEPENDENCY — SUPPLEMENTAL INCOME.

A regular and substantial supplemental income, which is not merely temporary, mandates a determination of partial dependency for purposes of worker's compensation death benefits (MCL 418.321; MSA 17.237[321]).

*Thurswell, Chayet & Weiner* (by *Lenny Segel* and *Tammy J. Reiss*) for the plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Dennis P. Partridge, Robert D. Goldstein,* and *Daniel Saylor*), for intervening plaintiff-appellant Allstate Insurance Company.

*Lacey & Jones* (by *Michael T. Reinholm*) for the defendant.

RILEY, J. In this case, we must construe various aspects of the Worker's Disability Compensation Act. Specifically, we must decide whether the plaintiff in this action was wholly or partially dependent on her deceased husband, where her contribution to the family's household income[1] was nineteen percent. Additionally, we must determine the proper formula for calculating a partially dependent person's weekly benefit pursuant to MCL 418.321; MSA 17.237(321).[2] Finally, we must determine whether a partially dependent person's weekly benefit is subject to the statutory maxi-

---

[1] Under MCL 418.321; MSA 17.237(321), we understand the total relevant annual family income to include the regular and substantial contributions, if any, of a claimant's and the deceased worker's after-tax wage.

[2] The statutory formula for calculation of a death benefit for a partially dependent person is as follows:

> If the employee leaves dependents only partially dependent upon his or her earnings for support at the time of injury, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as 80% of the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of injury.

mum and minimum rates of compensation.[3]

We conclude that plaintiff contributed to the household income by means of a regular and substantial pension and therefore was only partially dependent on her husband when he died. Additionally, we hold that the proper formula for the calculation of a weekly benefit for a partially dependent person must include consideration of such person's regular and substantial income as follows:

$$\frac{\text{Deceased employee's annual after-tax earnings}}{\text{Total relevant annual family income}}$$
$$\times$$
$$80\%$$
$$\times$$
$$\text{Deceased employee's after-tax weekly wage}$$

Finally, we determine that once the weekly benefit is calculated under this formula, it is not subject to the maximum and minimum rates of compensation. We note, however, that a partially dependent person's weekly benefits are inherently subject to the maximum and minimum rates of compensation because the calculation of a wholly dependent

[3] MCL 418.355(2); MSA 17.237(355)(2) provides for the maximum weekly benefit rate as follows:

Effective January 1, 1982, and each January 1 thereafter, the maximum weekly rate of compensation for injuries occurring within that year shall be established as 90% of the state average weekly wage as of the prior June 30, adjusted to the next higher multiple of $1.00.

MCL 418.356(2); MSA 17.237(356)(2) provides for the minimum weekly benefit rate as follows:

The minimum weekly benefit for death under section 321 shall be 50% of the state average weekly wage as determined under section 355.

person's weekly benefit is included in the partially dependent person's calculation.

I

On March 10, 1986, Clifford Weems, an employee of defendant Chrysler Corporation was injured in a work-related automobile accident that resulted in his death on March 23, 1986. Because Mr. Weems died in a work-related accident his widow, plaintiff Virginia Weems, was entitled to death benefits pursuant to MCL 418.321; MSA 17.237(321).[4] At the time of her husband's death, plaintiff had retired from the IRS and was receiving a monthly pension of $850. Chrysler therefore maintains that Mrs. Weems was only partially dependent on her husband.

On May 13, 1986, Chrysler filed a petition for determination of rights with the Bureau of Worker's Disability Compensation requesting a determination of who was dependent on Mr. Weems at the time of his death and whether they were wholly or

---

[4] If death results from the personal injury of an employee, the employer shall pay, or cause to be paid, subject to section 375, in 1 of the methods provided in this section, to the dependents of the employee who were wholly dependent upon the employee's earnings for support at the time of the injury, a weekly payment equal to 80% of the employee's after-tax average weekly wage, subject to the maximum and minimum rates of compensation under this act, for a period of 500 weeks from the date of death. If at the expiration of the 500-week period any such wholly or partially dependent person is less than 21 years of age, a hearing referee or worker's compensation magistrate, as applicable, may order the employer to continue to pay the weekly compensation or some portion thereof until such wholly or partially dependent person reaches the age of 21. If the employee leaves dependents only partially dependent upon his or her earnings for support at the time of injury, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as 80% of the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of injury. [MCL 418.321; MSA 17.237(321).]

partially dependent on him. Mrs. Weems also filed a petition for hearing on June 16, 1986, claiming that she and her three grandchildren were dependent on Mr. Weems. Additionally, Allstate Insurance, Mr. Weems' no-fault insurer, filed a petition to intervene aligning itself with plaintiff.

The magistrate held that plaintiff was fully dependent, but that her grandchildren were not dependents.[5] Chrysler was ordered to pay weekly benefits to Mrs. Weems at the maximum rate of $374 per week for five hundred weeks starting from the date of Mr. Weems' death. Defendant filed an application for review of claim with the Worker's Compensation Appellate Commission. Plaintiff did not seek review. The WCAC modified the magistrate's decision holding that because of Mrs. Weems' monthly pension, she was only partially dependent on Mr. Weems. Additionally, the WCAC concluded that the maximum and minimum rates of compensation applied to persons partially as well as wholly dependent. Therefore, because the formula the WCAC used to calculate plaintiff's benefits produced a figure lower than the minimum rate of compensation,[6] the WCAC awarded Mrs. Weems the then-minimum rate of compensation of $207 per week.

Plaintiff and defendant appealed the WCAC's decision in the Court of Appeals. The Court affirmed the WCAC, holding that plaintiff was par-

[5] Plaintiff contests the magistrate's finding that her grandchildren were not dependent, but did not file an appeal or cross appeal in that matter. The Court of Appeals did not consider it, and we therefore do not consider the issue on this appeal.

[6] MCL 418.356(2); MSA 17.237(356)(2) provides:

The minimum weekly benefit for death under section 321 shall be 50% of the state average weekly wage as determined under section 355.

tially dependent[7] and was entitled to the minimum weekly benefit. Although the Court's holding with respect to this issue is confusing, in order to achieve its result, the Court necessarily concluded that a partially dependent person's weekly benefit is subject to the maximum and minimum rates of compensation.[8]

We granted leave to appeal[9] and affirm the decision of the Court of Appeals on the issue of partial dependency. We reverse the Court of Appeals decision granting plaintiff, as partially dependent, the statutory minimum weekly benefit and instead adopt a formula for calculating death benefits that properly considers the partially dependent person's regular and substantial income. Additionally, we reverse the Court of Appeals determination that a partially dependent person's weekly benefit is directly subject to the maximum and minimum rates of compensation. We reiterate that the maximum and minimum rates of compensation are inherent within the formula for calculating a partially dependent person's benefits. The partially dependent person's formula includes consideration of what a partially dependent person

[7] 201 Mich App 309; 505 NW2d 905 (1993).

[8] The Court of Appeals first concluded that "§ 356(2) applies to all death benefit cases under § 321. The statute is clear. It makes no distinction between persons wholly and persons partially dependent." *Id.*, n 7 *supra* at 315. However, the Court then concluded:

Although the limiting language regarding maximums and minimums that follows the provision for benefits for wholly dependent persons in § 321 is not repeated after the provision for benefits for partially dependent persons, the limitations are enforced for those who are partially dependent by virtue of the fact that benefits for a partially dependent person are calculated as a percentage of benefits for persons wholly dependent. Thus, partial benefits are a percentage of whole benefits that have already been adjusted for statutory maximums and minimums. [*Id.* at 315-316.]

[9] 445 Mich 935 (1994).

would have received if wholly dependent, and that figure is subject to the maximum and minimum rates of compensation.

II

We are limited to a review of the findings of fact made by the WCAC. *Holden v Ford Motor Co,* 439 Mich 257, 263; 484 NW2d 227 (1992). Additionally, the standard of review of a final WCAC decision is that its findings are conclusive if there is any competent evidence to support them. *Id.* at 261-263; *Corbett v Montgomery Ward & Co, Inc,* 194 Mich App 624, 631; 487 NW2d 825 (1992).

Mindful of these standards, we must first determine whether there is any competent evidence supporting the WCAC's conclusion that Mrs. Weems was partially dependent on her husband at the time of his death. It is conceded that nineteen percent of the Weems' household income was derived from Mrs. Weems' $850 monthly pension. Plaintiff, however, asserts that her contribution was de minimis and is no indication that she was only partially dependent on her husband.[10] How-

[10] Plaintiff maintains that the Court should apply by analogy MCL 418.331; MSA 17.237(331), which conclusively presumes the dependency of a decedent's wife if the couple was living together at the time of death. As plaintiff has conceded, that statute was held unconstitutional in *Day v W A Foote Memorial Hosp,* 412 Mich 698; 316 NW2d 712 (1982), in which the Court held that the statutory conclusive presumption that widows, but not widowers, were wholly dependent on their deceased spouses was gender-based discrimination and violative of the Equal Protection Clause. Plaintiff requests that this Court reconsider its decision in *Day.*

Plaintiff's position is untenable because the Court again addressed this issue in *Pike v City of Wyoming,* 431 Mich 589; 433 NW2d 768 (1988). In *Pike,* the Court held that MCL 418.353(1)(a)(i); MSA 17.237(353)(1)(a)(i), a provision of the worker's disability act that conclusively presumes a wife to be dependent, was also held to be unconstitutional. Because of the Court's recent affirmation of *Day* and the fact that both decisions are based on the United States Supreme Court decision *Wengler v Druggists Mutual Ins Co,* 446 US 142; 100 S

ever, decisions of this state, as well as decisions of other jurisdictions, persuade us that Mrs. Weems was partially dependent on her husband when he died.[11]

We first note that in *Rose v Paper Mills Trucking Co,* 47 Mich App 1, 7; 209 NW2d 305 (1973), the Court held that the decedent's stepson, who was receiving monthly social security benefits of $105, was partially dependent on his deceased stepfather. The Court concluded that dependency is a question of fact, and, if the undisputed facts clearly demonstrate that the claimant was not totally dependent, a court could determine that the claimant was partially dependent as a matter of law.

Similarly, in *Ammons v Dunbar & Sullivan Construction Co,* 54 Mich App 107, 109-110; 220 NW2d 323 (1974), the claimant lived with her son and daughter. Until his death, the claimant's son paid the entire cost of maintaining the home,

Ct 1540; 64 L Ed 2d 107 (1980), plaintiff's request to reconsider *Day* is not meritorious.

Additionally, plaintiff argues that the Court of Appeals and the WCAC's conclusions lack logic because if Mr. Weems had survived, Mrs. Weems would have been considered wholly dependent under MCL 418.353(1)(b); MSA 17.237(353)(1)(b). The relevant portion of the statute states: "[e]xcept as to those conclusively presumed to be dependents, no person shall be deemed a dependent who receives less than 1/2 of his support from an injured employee."

This argument is also without merit because the presumption of whole dependency when beneficiaries have received less than half their support from deceased employees is *not* included in § 321. The presumption is specifically set forth in § 353, but that section addresses the compensation the dependent of a disabled employee will receive, rather than the compensation the survivor of a deceased employee will receive. It appears that because the Legislature did not include the language from § 353 in § 321, it did not intend for the presumption to apply in situations arising under that section.

[11] [A]ny substantial and reasonably regular income from any source other than the decedent will in most states bar a finding of total disability. [2 Larson, Workmen's Compensation Law, § 63.13, p 11-139.]

which amounted to approximately $400 monthly. During the time the decedent maintained the home, his mother received a pension and social security benefits, totaling $115 monthly. The claimant, however, saved all these payments and made no contribution toward household expenses. The Court held that the plaintiff was only partially dependent on her son, stating that "while the plaintiff may. have chosen to depend wholly upon her son's contribution despite her regular independent income, because of such income she was not wholly dependent upon the earnings of the deceased."[12] Therefore, in addition to holding that the claimant's payments rendered her partially dependent, the Court held that the manner in which a dependent disposes of any supplemental income is irrelevant to the determination whether the person was wholly or partially dependent.[13]

Plaintiff relies on *Kalcic v Newport Mining Co,* 197 Mich 364; 163 NW 962 (1917), for the proposi-

[12] Consistent with this holding we note that in *LePalm v Revco DS, Inc* and *O'Shea v Detroit News,* 202 Mich App 33, 44, n 2; 507 NW2d 771 (1993), the Court held that a dependent's earnings that constituted ten percent of the household income was not "so small that the survivor should be considered wholly and not partially dependent."

Cf. *Garbutt v Stoll,* 287 Mich 396, 400; 283 NW 624 (1939), in which the Court held that the plaintiff was totally dependent on her deceased son because the substantial sums she received from her deceased husband's employer were only *temporary.*

[13] Plaintiff attempts to distinguish *Rose* and *Ammons* on the basis that they did not involve a spousal relationship. In support, she correctly asserts that in *Rose,* the deceased had a legal obligation to support persons other than the claimant stepson. However, the identical analysis must be used to determine the status of any dependent. Plaintiff's assertion does not, therefore, persuade us that we should engage in a different analysis to determine dependency where the claimant is a spouse.

In fact, almost all decisions in this state determining partial or whole dependency involve a nonspousal relationship. Until 1985, a wife living with her husband was conclusively presumed to be totally dependent, so the analysis we employ in this case was not generally necessary in a case such as this before that time. See n 10.

tion that her income was trifling. However, in *Kalcic*, unlike the present case, the supplemental income the claimant received was sporadic, twenty or thirty cents a day, two or three times per month.[14] The claimant's husband contributed roughly ninety-three percent of the annual income, while her *irregular* wages provided only approximately seven percent of the annual income. We are therefore persuaded that *Kalcic* is clearly distinguishable from the present case.

From these cases, it is apparent that the law of dependency is well settled in Michigan. The law is likewise well settled in most other jurisdictions.[15]

---

[14] She earned roughly $80 annually.

[15] For example, in *Travelers Ins Co v Campbell,* 114 Ga App 601, 606; 152 SE2d 430 (1966), the court held that where the claimants "received an appreciable portion of their support from the father's farming activities," they could not be determined to be wholly dependent on their deceased son. See also *Goode Bros Poultry Co v Kin,* 201 Ga App 557, 559; 411 SE2d 724 (1991), in which the Georgia Court of Appeals again held that uncontradicted evidence that the decedent's wife was employed full time and that she and her four children substantially contributed to the household's support, did not authorize a finding that she was totally dependent on her deceased husband. Similarly in *Magma Copper Co v Aldrete,* 70 Ariz 48, 53; 216 P2d 392 (1950), the court held that a stepchild who had an independent income of $42 a month was not totally dependent on his deceased stepfather.

Consistent with these decisions, many courts have held that a person is wholly dependent where supplemental income is insubstantial and sporadic. In *Munoz v Workmen's Compensation Appeals Bd,* 19 Cal App 3d 144, 146; 96 Cal Rptr 394 (1971), the decedent, who worked in the United States, supported his family in Mexico by sending them about $2,400 annually. Decedent's two minor sons also worked in the United States and contributed approximately $300 of that sum. The California Court of Appeals held that the children's contribution could not be expected to continue for a "substantial" period of time, and therefore the family remained totally dependent on the father. Similarly, in Kentucky, the court in *Arnold & Wheeler Distributing Co v Meadows,* 377 SW2d 807 (Ky App, 1964), held that income from occasional babysitting did not render the mother of a decedent partially dependent.

See *Bloomington-Bedford Stone Co v Phillips,* 65 Ind App 189, 193-194; 116 NE 850 (1917), in which the Indiana Court of Appeals held:

Total dependency exists where the dependent subsists en-

Virtually all jurisdictions agree that a regular and substantial supplemental income, which is not merely temporary, mandates a determination of partial dependency. In the present case, it is undisputed that plaintiff received regular payments of $850 per month. These payments were determined by the WCAC to be substantial, rather than de minimis.[16] On the basis of the decisions of this state and a plain reading of the statute distinguishing between partial and whole dependents, we agree that Mrs. Weems was partially dependent on her deceased husband. The WCAC's conclusion that plaintiff was receiving substantial and reasonably regular income is unquestionably supported by "competent evidence" and is therefore conclusive. *Corbett* and *Holden, supra.* The decision of the Court of Appeals is affirmed with regard to the issue of partial dependency.

tirely on the earnings of the workmen. But in applying this rule courts have not deprived claimants of the rights of total dependents, when otherwise entitled thereto, on account of temporary gratuitous services rendered them by others, or on account of occasional financial assistance received from other sources, or on account of other minor considerations or benefits which do not substantially modify or change the general rule as above stated.

See also *Williams' Case,* 122 Me 477; 120 A 620 (1923); *Blue Diamond Coal Co v Frazier,* 229 Ky 450; 17 SW2d 406 (1929); *State ex rel Splady v Hennepin Co Dist Court,* 128 Minn 338; 151 NW 123 (1915); *McKesson-Fuller-Morrison Co v Industrial Comm,* 212 Wis 507; 250 NW 396 (1933).

[16] Plaintiff and Allstate raise the following hypothetical situation: What would be the result if the surviving spouse contributed one percent of the household income and the decedent spouse contributed ninety-nine percent of the household income? We do not dispute that this situation *may* be one where the survivor's contribution is de minimis, and therefore the survivor could be a whole dependent. The percentages alone, however, are not conclusive. The additional factor is whether the income is regular, rather than sporadic, i.e., whether the survivor is able to depend on the income on a regular basis. The hypothetical situation is in no way similar to the question we decide today: Whether decedent's widow is partially dependent where she receives a regular income from a pension equaling nineteen percent of the household income.

III

Having concluded that Mrs. Weems was partially dependent on her husband, it is necessary to determine the proper formula for calculating a partially dependent person's weekly benefit. It is conceded that the following language of § 321 calculating benefits for partial dependents is somewhat ambiguous:

> If the employee leaves dependents only partially dependent upon his or her earnings for support at the time of injury, the weekly compensation to be paid 'shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as 80% of the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of injury.

The language "the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased" is particularly difficult to apply.[17]

Chrysler urges the adoption of a formula in which the total relevant annual family income first is divided equally among all those dependent on it when the employee died.[18] After equally allocating the total relevant annual family income among those supported by it, Chrysler would then subtract the amount contributed by the partially dependent survivor. We are not persuaded that

[17] This language has previously plagued the courts while scholars have acknowledged that "this is an area in which we need further guidance from either the courts or the legislature." Welch, Worker's Compensation in Michigan: Law & Practice (rev ed), § 15.22, p 15-25. See also *LePalm, supra.*

[18] Chrysler adopted the formula used by Commissioner Smith in her opinion. Commissioner Smith concluded with the majority, however, that the minimum rate of compensation applied to partial dependents and Mrs. Weems was therefore entitled to the minimum rate.

defendant properly construes MCL 418.321; MSA 17.237(321). The lack of statutory support for Chrysler's formula is augmented by the formula's lack of logic. The death of a household member will not proportionately diminish household expenses. For example, large expenses such as mortgage payments, insurance, and taxes remain the same after the death of a household member.[19]

Plaintiff proposes that she should have received the proportion of the maximum benefit ($374 per week) that corresponds to the same ratio of the income provided by the deceased worker for her support. Under this method, she claims that she is entitled to eighty-one percent (her husband's share of the household income) of $374[20] or roughly $302.94 per week. Plaintiff relies on the general purpose of the wdca, which has the goal of humane and benevolent compensation to families who have lost the wages of a family member. As conceded by plaintiff, however, the proposed method is essentially without authority. In fact, the Court in *LePalm v Revco DS, Inc*, 202 Mich App 33; 507 NW2d 771 (1993), specifically rejected this calculation.[21]

---

[19] In *Ammons, supra* at 111, the Court rejected the arbitrary division of the decedent's income by the number of persons supported by that income. The Court correctly stated: "We express grave doubts that household expenses rise or fall in direct proportion to the increase or decrease in the number of persons being supported therein. There are certain fixed charges such as rent which are not changed or altered whether the family be large or small."

[20] The maximum rate of compensation at that time.

[21] The Court stated:

Although plaintiff's suggestion may seem reasonable in the abstract, we find no support for it in the language of § 321, which defines the benefits payable to partially dependent survivors in terms of a percentage of those payable to wholly dependent survivors, determined by dividing the amount contributed by the deceased to the partially dependent survivors by the annual earnings of the deceased at the time of injury. [*Id.* at 43.]

Instead, the *LePalm* Court adopted a formula that properly considers the regular and substantial income of the partially dependent person. Although we do not adopt the exact formula enunciated in *LePalm,* we agree that the partially dependent person's annual wages are a factor in determining the proportion a partially dependent person will receive.

It is clear from the language of MCL 418.321; MSA 17.237(321) that the Legislature intended to treat wholly and partially dependent persons proportionately on the basis of their dependence. The Legislature provided that claimants who were wholly dependent on a deceased employee would receive death benefits that would total eighty percent of the deceased employee's after-tax weekly earnings:

$$80\%$$
$$\times$$

Deceased employee's after-tax weekly earnings

$$=$$

Death benefits for wholly dependent claimant

It is clear and it logically follows that the Legislature intended that partially dependent persons receive eighty percent *of the extent of their dependency on* the deceased employee.

To determine the partially dependent person's benefits, the deceased employee's annual after-tax earnings are combined with the partially dependent person's regular and substantial annual income. The resulting figure is the total relevant annual family income:

Deceased employee's annual
after-tax earnings
+
Partial dependent's regular
and substantial annual income
=
Total relevant annual
family income

The partially dependent person is, therefore, dependent on that fraction of the total relevant annual family income contributed by the deceased employee's annual after-tax earnings. In other words, we must divide the deceased employee's annual after-tax earnings by the total relevant annual family income:

Deceased employee's annual after-tax earnings
Total relevant annual family income
=
Claimant's partial dependency

Once the claimant's partial dependency is determined, proportionality with the formula for wholly dependent benefits requires that the resulting figure be multiplied by the amount that would be awarded if the partially dependent person were wholly dependent. Thus, the formula is:

Deceased employee's annual after-tax earnings
Total relevant annual family income
×
80%
×
Deceased employee's after-tax weekly wage

Application of this formula provides death benefits to partially dependent persons that are proportionate to the benefits they would have received had

they been wholly dependent on the earnings of the deceased employee.

In the present case, it is uncontested that all of Mr. Weems' income went toward household support.[22] Therefore, to implement this formula, we must initially combine Mr. Weems' annual earnings ($42,791) and Mrs. Weems' annual earnings ($10,200), which equal $52,991. This reflects the total relevant annual family income. Mr. Weems' annual income ($42,791) is then divided by the total relevant annual family income ($52,991) to yield a proportion that is eighty-one percent.

Pursuant to the statute, this percentage is then multiplied by the amount a wholly dependent person would receive in weekly benefits, which, in this case, is the statutory maximum—$374.[23] The final result is that Mrs. Weems is entitled to receive $302.94 per week.

This calculation is consistent with the manner used to initially determine partial dependency, i.e., the only criteria by which a person is adjudged wholly or partially dependent is whether that

[22] This fact is relevant because we recognize that in situations in which the decedent leaves more than one partially dependent person, the death benefits must be divided among them. The statute states that "if there is more than 1 person partially dependent, the death benefit shall be divided among them according to the relative extent of their dependency." MCL 418.331(b); MSA 17.237(331)(b). Although we are not presented with such a situation, we note that in such a circumstance, e.g., in which the decedent is partially supporting children living in another household, that amount of the decedent's wages that went toward the support of the child or children would be subtracted from the decedent's contribution toward household support of the partially dependent spouse. This amount would correspondingly be used in the formula to determine the child's benefit.

[23] To calculate the amount a wholly dependent person would receive under the statute, we must multiply Mr. Weems' after-tax average weekly wage by eighty percent. It was stipulated that Mr. Weems' average weekly wage was $822.91 per week. Multiplying this figure by the statutory eighty percent equals $658.33. However, this figure was above the then-existing statutory maximum of $374 per week. Therefore, a wholly dependent person would have been eligible for that amount.

person receives a regular and substantial income. This is the *only* factor that even categorizes a person as partially dependent. Yet, both partial dissents propose a remand in order to determine what amount of the decedent's income was used for the support of the partial dependent.[24] Such a determination is absolutely unworkable in practice. It would be impossible in most cases to even roughly estimate which portion of the decedent's income was used for the sole support of the dependent.[25] Moreover, such a construction does not address the issue of the dependent's income that was used to support the decedent. In cases where

[24] Neither dissent has cited any credible sources that would indicate such a construction was intended by the Legislature. Justice CAVANAGH suggests that the following language from MCL 418.331(b); MSA 17.237(331)(b) dictates such a result:

> If there is no one wholly dependent or if the death of all persons wholly dependent shall occur before all compensation is paid, and there is but 1 person partially dependent, such person shall be entitled to compensation according to the extent of his or her dependency . . . .

We see no support for the suggestion that the "extent of his or her dependency" manifests a legislative intent to factually determine that portion of the decedent's income that was used for the support of the dependent. Again, such a reading is inconsistent with the general purpose of the statute since the very determination whether a person is dependent hinges on the existence of a supplemental income. Indeed, hypothetically, a mere twenty percent of the decedent's income may have gone toward the support of a wholly dependent person. Yet, that person remains wholly dependent because the portion of the decedent's income used for the dependent's support is irrelevant.

Therefore, the language of the statute should not be construed in the manner proposed by the dissent because it produces an illogical result. It is even conceded by the dissent that a wholly dependent person could quite possibly receive a higher award than a similarly situated person who is partially dependent. CAVANAGH, J., *post,* p 710.

[25] We additionally note the difficulty of producing any concrete evidence that would support the dependent's assertions of how much was received for support from the decedent. The only conceivable evidence would be the sole testimony of the dependent. This would be wholly unfair to the employer who could not possibly contest such testimony, and would essentially be required to pay what the dependent maintains was received from the decedent.

the dependent was earning, e.g., forty percent of the household income in which the majority of that income was used for the support of the decedent, the dependent will be in a substantially better position than may be accounted for by the dissent's formula. The proposal to remand for the sole determination of what portion of the decedent's income went to support the dependent does not consider this important factor.[26]

IV

Having calculated the amount Mrs. Weems should have received in weekly benefits, we must now determine whether that amount is subject to the maximum and minimum rates of compensation. We first review the plain language of the statute and note that the limiting language "subject to the maximum and minimum rates of compensation" does not precede the calculation for partial dependents.[27] In construing a statute, "effect must be given, if possible, to every word, sentence and section." *Grand Rapids v Crocker,* 219 Mich 178, 182; 189 NW 221 (1922). Moreover, to discover the legislative intent, "the entire act must be read, and the interpretation to be given to a particular word in one section arrived at after

---

[26] The dependent's supplemental income is such an important factor that without it, the dependent would be wholly dependent and it would not even be necessary to calculate the benefits for a partially dependent person in this or any case.

[27] If death results from the personal injury of an employee, the employer shall pay, or cause to be paid, subject to section 375, in 1 of the methods provided in this section, to the dependents of the employee who were wholly dependent upon the employee's earnings for support at the time of the injury, a weekly payment equal to 80% of the employee's after-tax average weekly wage, subject to the maximum and minimum rates of compensation under this act, for a period of 500 weeks from the date of death. [MCL 418.321; MSA 17.237(321). Cf. n 3.]

due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Id.* at 182-183. Qualifying words and phrases in a statute refer solely to the last antecedent in which no contrary intention appears. *General Motors Corp v Erves (On Rehearing)*, 399 Mich 241, 273; 249 NW2d 41 (1976) (opinion of WILLIAMS, J.); *Kizer v Livingston Co Bd of Comm'rs*, 38 Mich App 239, 252; 195 NW2d 884 (1972).

The fact that the statute distinguishes between wholly and partially dependent persons indicates that the two classes were ultimately intended to be compensated differently. For example, if a wholly dependent person's benefits were below the minimum, that dependent would be entitled to the minimum. A partially dependent person should only expect to receive a percentage of what a wholly dependent person would receive. To hold otherwise would be to ignore the plain language of the statute, distinguishing between whole and partial dependents. If a partially dependent person received the same amount as a wholly dependent person, it would frustrate the Legislature's intent in drawing that distinction.

The maximum and minimum rates of compensation must not be applied to alter a partially dependent person's weekly benefit *after* the proper formula has been applied to determine the dependent's weekly benefit.[28] A partially dependent person's benefit is a percentage of a wholly dependent person's benefit, which has already been adjusted according to the statutory maximum and minimum rates of compensation. Therefore, hypotheti-

[28] We note that a partially dependent person would never be limited by the maximum rate of compensation because, by any calculation, such a person would only be entitled to receive a percentage of what a wholly dependent person could receive, which would never be above the statutory maximum.

cally, if in the present case a wholly dependent person was entitled to the statutory minimum, and it was determined that a partially dependent person was entitled to seventy-six percent of the wholly dependent person, the result would be lower than the minimum rate of compensation, not subject to it. In this manner, the maximum and minimum rates of compensation are considered in the calculation to the extent that partially dependent persons receive a percentage of the amount paid to wholly dependent persons that has been adjusted for the statutory maximum and minimum rates of compensation. We are persuaded that this is the only logical interpretation of the statute because the qualifying language follows and modifies wholly dependent persons.[29] The same language does not follow and therefore should not be read to modify the amount paid to partially dependent persons except to the extent

[29] Justice CAVANAGH maintains in his partial dissent that the statutory maximum and minimum rates of compensation directly apply to partially dependent persons. It is asserted that because the five-hundred-week limitation of benefits is not repeated after partially dependent persons, yet clearly limits such dependents, the maximum and minimum rates of compensation apply to partially dependent persons by analogy even though the language is not repeated. See MCL 418.321; MSA 17.237(321). However, the analogy falls apart. The difference is that the next sentence after the five-hundred-week limitation makes it clear that the limitation applies to wholly and partially dependent persons: "If at the expiration of the 500-week period any such wholly or partially dependent person is less than 21 years of age . . . ." No such correlation exists to indicate that the maximum and minimum rates directly limit a partially dependent person's benefit. To the contrary, the statute clearly indicates that a partially dependent person's benefit is a product of a wholly dependent person's benefit. This suggests that the maximum and minimum rates do apply to a partially dependent person's benefit but only to the extent that the benefit is a product of a wholly dependent person's benefit. Therefore, unlike the five-hundred-week limitation, no such reference is made to partially dependent persons beyond the clear requirement that benefits are derived from a percentage of a wholly dependent person's benefit. The dissent's analogy to the five-hundred-week limitation only disproves its theory that the minimum and maximum rates of compensation directly apply to partially dependent persons.

that the benefits that a partially dependent person receives are modified by the amount the partial dependent would have received had the partial dependent been wholly dependent.[30]

## V

Mrs. Weems was not wholly dependent on her husband when he died. She had a continuous and substantial income that amounted to nearly twenty percent of the household income. Her monthly pension therefore was not de minimis. The proper formula for calculating the weekly benefits of a partially dependent person is:

$$\frac{\text{Deceased employee's annual after-tax earnings}}{\text{Total relevant annual family income}}$$

$$80\%$$
$$\times$$
Deceased employee's after-tax weekly wage

which would allow Mrs. Weems to collect $302.94 per week. The maximum and minimum rates of compensation do not directly apply to partial dependents, although they are implicitly figured into the formula because a partially dependent person's benefit is a product of what a totally dependent

---

[30] In *LePalm, supra* at 42, the Court of Appeals concluded that the minimum benefit provision of § 356(2) applied to both partial and total dependent benefits awarded under § 321. The Court stated that it "believe[d] that the Legislature meant to make death benefits subject to the statutory maximum and minimum . . . ." The conclusion of the Court of Appeals in *LePalm* is not consistent with the rules of construction. The Court of Appeals in the present case applied the proper reasoning, stating "partial benefits are a percentage of whole benefits that have already been adjusted for statutory maximums and minimums." *Weems*, n 7 *supra* at 316. We overrule *LePalm* to the extent that it is inconsistent with our conclusion today that a partially dependent person's weekly benefit is subject to the maximum and minimum rates of compensation.

person would have received (which is subject to the maximum and minimum rate of compensation). The decision of the Court of Appeals is affirmed with respect to the issue of partial dependency. The decision of the Court of Appeals is reversed with regard to the calculation of weekly benefits and the extent that it holds that the maximum and minimum rates of compensation directly apply to partially dependent persons.

BRICKLEY, C.J., and MALLETT and WEAVER, JJ., concurred with RILEY, J.

CAVANAGH, J. (*concurring in part and dissenting in part*).

I

I concur with the majority's conclusion that the plaintiff was only partially dependent upon her deceased husband because she received a substantial and reasonably regular source of income of her own. However, I would clarify the standard of review. The worker's compensation statute provides:

The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission, if application is made by the aggrieved party within 30 days after the order by any method permissible under the Michigan court rules. [MCL 418.861a(14); MSA 17.237(861a)(14).]

I believe that the phrase "findings of fact" refers to such determinations as the source and the amount of the deceased employee's income; the

number of dependents and their relationship to the deceased employee; the facts surrounding the deceased employee's death; the source, the amount, and the regularity of any dependent person's income; and the amount of money necessary to maintain the household for the dependents. However, the *conclusion* to be drawn from those facts, that is, whether a person is wholly or partially dependent upon the deceased employee is a legal question that is not limited on review.[1]

II

I disagree with the majority's interpretation of the statutory formula for determining death benefits for partially dependent persons. When we are called on to interpret a statute, the rules of statutory construction are well defined:

> The words of a statute, however, should not be construed in the void but must be read together to effectuate the intention of the legislature. *People v Burns,* 5 Mich 114 (1858). The general rule of statutory construction was stated by this Court in *Grand Rapids v Crocker,* 219 Mich 178 [189 NW 221] (1922):
> "There seems to be no lack of harmony in the rules governing the interpretation of statutes. All are agreed that the primary one is to ascertain

---

[1] See *Garbutt v Stoll,* 287 Mich 396; 283 NW 624 (1939). The *Garbutt* Court indicated that the conclusion of total dependency or partial dependency was a legal question:

> [T]he question with which we are confronted is whether the rather substantial but temporary monthly payments voluntarily made to plaintiff by the telephone company for a year . . . *changed her status* from that of a total dependent to one of partial dependency. [*Id.* at 400. Emphasis added.]

See also *Kimber v Michigan Light Co,* 229 Mich 663, 668; 203 NW 110 (1925) (Where "the facts are undisputed, . . . dependency becomes a legal conclusion").

and give effect to the intention of the legislature. All others serve but as guides to assist the courts in determining such intent with a greater degree of certainty. If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary. The rule is no less elementary that effect must be given, if possible, to every word, sentence and section. To that end, the entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Id.* at 182. [*Dussia v Monroe Co Employees Retirement System,* 386 Mich 244, 248; 191 NW2d 307 (1971).]

The worker's compensation statute provides:

If death results from the personal injury of an employee, the employer shall pay, or cause to be paid, subject to § 375, in 1 of the methods provided in this section, to the dependents of the employee who were *wholly dependent* upon the employee's earnings for support at the time of the injury, *a weekly payment equal to 80% of the employee's after-tax average weekly wage,* subject to the maximum and minimum rates of compensation under this act, for a period of 500 weeks from the date of death. . . . If the employee leaves dependents only *partially dependent* upon his or her earnings for support at the time of injury, *the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as 80% of the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of injury.* [MCL 418.321; MSA 17.237(321). Emphasis added.]

To visualize what the Legislature set out to do, we need to consider the overall design of worker's

compensation death benefits. The Legislature provided that persons who were wholly dependent upon a deceased employee would receive death benefits that would total eighty percent of the deceased employee's after-tax earnings.[2] The Legislature logically provided that partially dependent persons each would receive a proportionate amount of the deceased employee's after-tax earnings that reflected the extent of the dependency. Another provision of the worker's compensation act expresses this concept a little more clearly:

> In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury. .... If there is no one wholly dependent . . . , and there is but 1 person partially dependent, *such person shall be entitled to compensation according to the extent of his or her dependency;* and if there is more than 1 person partially dependent, the death benefit shall be divided among them *according to the relative extent of their dependency.* [MCL 418.331(b); MSA 17.237(331)(b). Emphasis added.]

A simple example will help to understand the overall intent of the Legislature. Setting the statutory limits aside, assume that a deceased employee had after-tax earnings of $50,000. For policy reasons, the Legislature determined that the most any employer would be liable for in death benefits is eighty percent of the employee's earnings.[3] Mr. Edward M. Welch describes this as the "total

---

[2] MCL 418.331(b); MSA 17.237(331)(b), provides apportionment formulas for multiple dependents.

[3] In 1980 PA 357, the Legislature increased the percent from two-thirds to eighty percent. The 1980 reform measures were the culmination of a compromise between business, which criticized the cost and inefficiency of the system, and labor, which criticized inadequate benefit levels. Senate Analysis, SB 1044 (Second Analysis), January 7, 1981.

benefit available." Welch, Worker's Compensation in Michigan: Law & Practice (rev ed), § 15.21, p 15-20. He instructs that this total benefit amount is divided or prorated among the deceased employee's dependents, as provided in §§ 321, 331, 335, and 341. *Id.,* § 15.22, p 15-21. If that employee left dependents who were wholly dependent, then §§ 321 and 331 provide that the wholly dependent persons will divide between themselves a total amount of eighty percent of $50,000, or $40,000. By comparison, if the deceased employee left dependents who were partially dependent upon sixty percent of the deceased employee's salary for support, it is only logical then, that § 321 provides that the dependents should receive eighty percent of the extent of the earnings that they were dependent upon. In other words, they would divide eighty percent of sixty percent of $50,000, or $24,000.

Mr. Welch illustrates this idea with a hypothetical example of a deceased employee who contributed ten percent of his salary to his partially dependent mother. Welch, § 15.22, p 15-22. He states that the mother would then be entitled to ten percent of the total benefit available, i.e., ten percent of eighty percent of the deceased employee's net salary. *Id.*

Once we determine the amount that is logically expected, then we can determine whether the total amount of death benefits is within the statutory limits. The statutory limits reflect the Legislature's intent to limit the risks that both business and labor would bear. This purpose flows from the compromise design of the worker's compensation "no-fault" system.[4] In exchange for automatic benefits, employees gave up unlimited tort recov-

---

4 See, generally, Welch, § 1, pp 1-1 to 1-2, 1-7.

ery. In exchange for limited liability, employers became required to at least minimally compensate employees, or their dependents, for work-related injuries or deaths, regardless of whether the employer was at fault.

III

I disagree with the majority that § 321 is so ambiguous that it can be ignored. A phrase-by-phrase interpretation of the § 321 statutory formula for death benefits for persons partially dependent upon a deceased employee is helpful.

As an introduction, the statute provides:

*If the employee leaves dependents only partially dependent upon his or her earnings for support at the time of injury . . . .* [Emphasis added.]

This is the triggering language. It identifies those dependents of the deceased employee who also receive substantial and reasonably regular income from other sources.[5]

The statute continues:

*[T]he weekly compensation to be paid shall be equal to . . . .* [Emphasis added.]

This identifies the formula that follows.

The statutory formula is:

*[T]he same proportion of the weekly payments for the benefit of persons wholly dependent as 80% of the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of injury.* [Emphasis added.]

[5] See, e.g., *Rose v Paper Mills Trucking Co*, 47 Mich App 1, 7; 209 NW2d 305 (1973).

In order to make it more readable, I will separate the factors of the formula. The statute identifies one factor as:

*the annual earnings of the deceased at the time of injury.*

This simply means the annual earnings of the deceased.

Another factor in the formula is:

*the amount contributed by the employee to such partial dependents.*

I interpret this as designating the extent of the partial dependency,[6] in other words, that portion of the employee's salary that was used to support the dependents. This factor would require a factual determination by the trier of fact. The trier of fact could start with the amount of the deceased employee's salary and take proofs from the parties regarding the extent that the salary supported the partial dependents. In a given case, it may be easier for the trier of fact to start with such factors as the total household expenses[7] and cost of living statistics, and then work backwards, by subtracting the income from the dependent person(s), to determine the amount of the deceased employee's salary necessary to maintain the standard of living for the dependents.

Returning to the formula, the critical language is:

---

[6] See MCL 418.331(b); MSA 17.237(331)(b).

[7] The dependent person(s) would have to prove by a preponderance of the evidence the household income that was necessary to maintain the standard of living. Such proof may include, but would not be limited to, such items as: mortgage payments, utility bills, food and clothing allowances, car expenses, tuition funds, et cetera.

*the same proportion of the weekly payments for*
*the benefit of persons wholly dependent as 80%.*

This language simply dictates that death benefits
for partially dependent persons shall be deter-
mined by the same procedure that death benefits
for wholly dependent persons are determined.
Death benefits for wholly dependent persons are a
direct function of the deceased employee's after-
tax average weekly wage. Consequently, death
benefits for partially dependent persons likewise
should be a direct function of the deceased employ-
ee's after-tax average weekly wage. Further, the
Legislature provided that the eighty percent limi-
tation it provided in the wholly dependent person
benefits computation also applies to death benefits
for partially dependent persons.

Therefore, I conclude that the final factors in
the statutory formula are the eighty percent mul-
tiplier and the deceased employee's after-tax aver-
age weekly wage.

Accordingly, I find that the statutory formula
reads as follows:

$$80\% \times \frac{\text{amount contributed to partial dependent}}{\text{annual earnings of the deceased}} \times$$

employee's after-tax average weekly wage

This interpretation is derived directly from the
statutory language and is consistent with the over-
all design. It will never result in an award to a
partially dependent person that is greater than an
award to a wholly dependent person, and it will
almost always result in an award to a partially

dependent person that is less than the correspond-
ing award to a wholly dependent person.[8]

Once the first step of determining the § 321
death benefits is completed, the second step in the
analysis is to compare the resulting amount to the
statutory limits. If the resulting amount is greater
or lesser than the statutory limitations, *then, and
only then, will the statutory limits be applied.*
This interpretation preserves the clear language of
§ 356. "In construing legislative intent it is manda-
tory, if possible, to construe an act as a whole,
thus avoiding the construction of one provision in
such a manner as to negate another." *Franges v
General Motors Corp,* 404 Mich 590, 611; 274
NW2d 392 (1979) (citation omitted). Section 356
provides that "[t]he minimum weekly benefit for
death under section 321 shall be 50% of the state
average weekly wage as determined under section
355." MCL 418.356(2); MSA 17.237(356)(2). There is
no qualifying language that provides that the
§ 356 minimum only applies to death benefits for
wholly dependent persons, as the majority is in-
jecting into § 356. Section 356 unambiguously pro-
vides a minimum for § 321 death benefits. Death
benefits for partially dependent persons are § 321
death benefits.

Additionally, in 1980 PA 357, the Legislature
combined the minimum benefit levels from various
provisions into a single provision, § 356.[9] In the

---

[8] One exception that could arise would be the situation where the
deceased employee contributed one hundred percent of his income to
persons who were partially dependent. Such a situation is unlikely,
because the trier of fact will likely find that the deceased employee
retained at least a minute portion of his income for his own personal
expenses. Another exception would be where determinations for both
wholly and partially dependent persons would yield the statutory
maximum.

[9] The legislative history of 1980 PA 357, which added § 356, ex-
plained the effect on statutory minimum benefits:

process, the Legislature specifically "eliminate[d] minimum weekly benefit rates (*except for death or partial disability*) . . . ." Senate Analysis, SB 1044 (Second Analysis), January 7, 1981 (emphasis added). Sections 321 and 331 demonstrate that the Legislature clearly knew how to distinguish wholly dependent persons from partially dependent persons. If the Legislature had intended that § 356 not apply to death benefits for partially dependent persons, it would have said so. This interpretation is also in line with our earlier holding that under the pre-1980 § 351, part-time employees were entitled to the same statutory minimum compensation as full-time employees where the Legislature did not expressly provide a distinction. *Irvan v Borman's, Inc,* 412 Mich 496, 502; 315 NW2d 521 (1982). Therefore, the statutory minimum for death benefits applies to death benefits payable to partially dependent persons.[10]

> After December 31, 1981 the weekly benefit for death or total disability will be set at 80 percent of an employee's after-tax average weekly wage, subject to a maximum weekly benefit rate equal to 90 percent of the state average weekly wage as of June 30 of the previous calendar year. The maximum will be adjusted each January 1 to equal 90 percent of the state average weekly wage for the previous June 30 rounded up to the next dollar. A minimum weekly *death benefit* will be set at one-half of the applicable state average weekly wage. The minimum benefit level for *total disability* will be eliminated . . . . [Senate Analysis, SB 1044 (Second Analysis), January 7, 1981.]

[10] Moreover, in § 321, following the language regarding wholly dependent persons, the specific language provides:

> [S]ubject to the maximum and minimum rates of compensation under this act, for a period of 500 weeks from the date of death. [MCL 418.321; MSA 17.237(321).]

The majority focuses on the Legislature's failure to repeat the "subject to" language after the sentence that determines death benefits for partially dependent persons. RILEY, J., *ante* at 701. The majority has failed to recognize that the Legislature likewise did not repeat the five-hundred-week limitation. The sentence in § 321 that connects the

By the same measure, § 355 provides that "[t]he maximum weekly rate of compensation for injuries occurring within that year shall be established as 90% of the state average weekly wage . . . ." MCL 418.355(2); MSA 17.237(355)(2). This is a blanket limitation that applies to all benefits payable under the statute.

## IV

I disagree with the majority's injection of the dependent person's income into the formula. RILEY, J., *ante* at 696. There is absolutely no language in § 321 that would even remotely suggest that the amount of the dependent person's income is a relevant factor in the statutory formula. The amount of the *dependent person's* income is irrelevant; the only amount that is relevant is the amount of the *deceased employee's* income that was provided to support the dependents. See Welch, § 15.22, p 15-22: "the percentage of the dependent's income that came from the deceased worker is immaterial. The percentage of compen-

wholly dependent person sentence to the partially dependent person sentence provides:

> If at the expiration of the 500-week period any such wholly *or partially dependent person* is less than 21 years of age, a hearing referee or worker's compensation magistrate, as applicable, may order the employer to continue to pay the weekly compensation or some portion thereof until such wholly or *partially dependent person* reaches the age of 21. [MCL 418.321; MSA 17.237(321). Emphasis added.]

Even though the Legislature did not repeat the five-hundred-week period in the sentence regarding partially dependent persons, it clearly evidenced its intent that partially dependent persons were subject to the five-hundred-week limitation in the previous sentence. Likewise, this corresponding omission of the "subject to" language underscores the fact that the Legislature intended that death benefits for partially dependent persons be determined by the same two-step procedure used to determine death benefits for wholly dependent persons.

sation is based on the portion of the worker's income that went to the dependent."

Moreover, the majority has failed to recognize that a partially dependent person's financial status is not tied to a wholly dependent person's financial status. It is an independent and unrelated function. The majority's premise that a partially dependent person is automatically entitled to less money seems to be based on an erroneous belief that a family's total household expenses are automatically lower when there are two incomes, as opposed to one. The sources of the incomes is irrelevant. The issue is how much income is required to maintain the household's standard of living.

Under the well-defined rules of statutory construction, we must read § 331(b), "extent of their dependency," in conjunction with § 321, "the amount contributed by the employee to such partial dependents." The majority's new formula totally negates the "amount contributed" language without explanation. The majority has created a new formula, which invents a new term designated as the total relevant family income, without even attempting to connect this concept to § 321. RILEY, J., *ante* at 696. Section 321 provides the statutory formula, which expressly refers to an *amount contributed* by the deceased to the survivors. "Amount" means quantity.[11] The ordinary dictionary definition of "contribute" is "to give (money, . . .) along with others to a common supply, fund, etc."[12] "Give" in turn means "to hand to someone"[13] or to transfer something.[14] The word

---

[11] Black's Law Dictionary (6th ed), p 83.

[12] *The Random House College Dictionary* (rev ed), p 293. See Black's Law Dictionary, *supra*, p 328: "[t]o . . . give something."

[13] *Random House Dictionary, supra,* p 558.

[14] Black's Law Dictionary, *supra,* p 689.

"contribute" requires an act of giving. Therefore, I interpret § 321 as providing that the relevant quantity is the actual dollars that the deceased employee *gave* to the dependents.

The majority states that the claimant's partial dependency is the "fraction of the total relevant annual family income contributed by the deceased employee's annual after-tax earnings." RILEY, J., *ante* at 696. While this idea sounds plausible, it is not found in § 321. Section 321 refers to the fraction of the *deceased employee's income* that the employee *gave,* i.e., contributed, to the dependents —not the fraction of the common pool that came from the deceased employee. These are two very different concepts that the majority is interchanging without a single reference to § 321.

Additionally, I believe that the majority's formula will prove inflexible when faced with multiple households. In today's society there is a very real possibility that the deceased employee had been supporting multiple relatives in multiple households, and § 331(b) makes references to children of former spouses living with the former spouse or guardian, and to parents, siblings, grandparents, and grandchildren. Indeed, in the instant case, the plaintiff argued that part of her husband's salary was sent to the support of their grandchildren in another state.

The majority has left unexplained which relevant family income will be counted. For instance, if the deceased employee had paid $100 per week for the support of a child to a former spouse, will the former spouse's income be a factor in the formula, even though the amount contributed to the child was clearly $100 per week? If the child is sixteen years or older,[15] the majority's approach

---

[15] So that the child is not wholly dependent as provided in § 331(b).

leaves the difficult specter of determining how much that child would have received if wholly dependent and what fraction of the former spouse's household income came from the child support. I believe that the sounder approach is to preserve the flexibility that the statute contains, which provides that for those not conclusively presumed to be wholly dependent, the question of dependency is one of fact, § 331(b). In such a scenario, the child was clearly dependent on all the $100 per week that was contributed to the child. Therefore, depending on how the total death benefits package is limited by the statutory limits, the child should theoretically be entitled to eighty percent of the $100.[16] I do not believe that the majority's approach would yield such a result.

We have previously stated that we are to construe the worker's compensation act in a manner that advances the Legislature's underlying policies:

> The Workers' Disability Compensation Act was designed to help relieve the social and economic difficulties faced by injured workers. As remedial legislation, it is liberally construed to grant rather than deny benefits. [*Bower v Whitehall Leather Co*, 412 Mich 172, 191; 312 NW2d 640 (1981). Citations omitted.]

This same rationale should apply to the amount of those benefits.

However, the majority's creative use of the statutory maximum results in an artificial ceiling for death benefits below the statutory maximum in § 355. As explained above, I believe that partially dependent persons are entitled to eighty percent of

---

[16] If the total death benefits due to all the deceased employee's dependents exceeds the statutory maximum, then § 331(b) would apportion the statutory maximum among the qualifying dependents.

the amount contributed by the deceased employee to them, with the total death benefits limited by the statutory maximum. In contrast, the majority limits the wage variable in its benefits formula to the statutory maximum, in spite of its admission that the statute is ambiguous. Contrary to the *Bower* spirit of liberally construing the remedial worker's compensation act in favor of granting benefits, the majority is inappropriately restricting the full availability of statutorily provided benefits. I believe that the statutory maximum and minimum should be applied *after* determining the applicable death benefits for partially dependent persons.

V

Therefore, in the instant case, we do not have any findings regarding what portion of Mr. Weems' salary was contributed to maintain the Weems household.

I would remand this case for a factual determination of the amount of Mr. Weems' salary that was contributed to the support of Mrs. Weems.[17] I

[17] For illustrative purposes only, I offer some hypothetical results using the assumptions that Mr. Weems' after-tax average weekly wage was $822.91 and that his annual earnings were $42,791. For instance, we can say that Mr. Weems kept twenty-five percent of his income for his own personal usage. The other seventy-five percent was contributed to paying household expenses. Therefore, as applied to the instant facts, assuming that seventy-five percent of Mr. Weems' after-tax earnings was contributed to Mrs. Weems, the formula yields:

$$80\% \times \frac{\$32,093}{\$42,791} \times \$822.91 = \$494$$

Then, turning to § 355(2), which limits maximum weekly benefits, the payable death benefits would be $374. It is noteworthy that even at this level, Mrs. Weems would experience hardship. Her total household income would be $29,648 (her pension, $10,200 plus $374 for fifty-two weeks); while her standard of living would correspond to her income level plus the extent of her former dependency on Mr. Weems:

concur with the majority with respect to its con-
clusion that Mrs. Weems was only partially depen-
dent upon Mr. Weems. I dissent from the majori-
ty's interpretation of the statutory formula in
§ 321 for worker's compensation death benefits for
partially dependent persons.

Levin, J., concurred with Cavanagh, J.

Boyle, J. (*concurring in part and dissenting in
part*). I concur in the majority's result and analysis
of part II, finding that the plaintiff was partially
dependent on her deceased husband, and part IV,
holding that the statutory minimum and maxi-
mum limitations on dependent benefits are indi-
rectly incorporated into a proper formula for par-
tial dependent benefits calculation. I write sepa-
rately because I do not agree with the formula
adopted by either the majority or Justice
Cavanagh for calculation of partial dependent
benefits.

I agree with Justice Cavanagh that the deter-

$10,200 plus $32,093 (seventy-five percent of $42,791), which equals
$42,293.

If, for instance, fifty percent of Mr. Weems' after-tax earnings were
contributed to Mrs. Weems, the formula yields:

$$80\% \times \frac{\$21,395}{\$42,791} \times \$822.91 = \$329.16$$

In the instant case, the payable death benefits would fall within the
statutory maximum and minimum limits.

To the other extreme, if, for instance, twenty percent of Mr.
Weems' after-tax earnings were contributed to Mrs. Weems, the
formula yields:

$$80\% \times \frac{\$\ 8,558}{\$42,791} \times \$822.91 = \$131.66$$

However, applying § 356, which sets the statutory minimum for
death benefits, the payable death benefit would be $207.35, the
applicable minimum rate for these parties.

mination of "the amount contributed by the employee to such partial dependents" to be used in calculating a partial dependent's weekly benefits pursuant to MCL 418.321; MSA 17.237(321), requires a factual determination by the trier of fact. I would hold that the present case should be remanded to the magistrate for such a determination. Neither of my colleagues' opinions, however, account for the amendment of MCL 418.321; MSA 17.237(321), adding the phrase "80% of." 1985 PA 103.

In order to remain faithful to the statutory formula for partial dependent benefits calculation, I would adopt Justice CAVANAGH's formula, *ante* at 710, except I would find that the statute expressly requires that the fraction derived from taking eighty percent times the amount contributed by the employee to the partial dependent over the annual earnings of the deceased employee at the time of injury be multiplied by the "weekly payments for the benefit of persons wholly dependent," MCL 418.321; MSA 17.237(321). Although Justice CAVANAGH's formula more accurately reflects the language of the statute than does the majority's,* by finding that the amendment adding "80% of " "simply dictates that death benefits for partially dependent persons shall be determined by the same procedure that death benefits for wholly dependent persons are determined," *id.,* Justice CAVANAGH effectively reads this portion of the 1985 amendment out of the statute.

---

* I agree with Justice CAVANAGH that the majority ignores the statutory formula set forth in § 321.